Jory R. Strizich, #437339
Cheshire Correctional Institution
900 Highland Avenue
Cheshire, CT 06410

MAY 23 2025

Clerk, U.S. Courts
District of Montana
Helena Division

*Petitioner Pro Se*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| JORY STRIZICH,<br><br>       Petitioner,<br><br>    vs.<br><br>BRIAN GOOTKIN, ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>       Respondents. | Cause No. CV 23-24-H-BMM-JTJ<br><br><br>**AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY** |

*Instructions—Read Carefully*

1. Use this form if you challenge the fact or duration of your custody under the authority of the State of Montana. Even if you believe 28 U.S.C. § 2254 does not apply, please use this form and answer its questions.

2. Your petition must be legibly handwritten or typed. You must tell the truth and sign the form. You may be prosecuted for perjury and/or one or more of your claims may be dismissed if you falsely state a material fact. *Answer all the questions.* You are not necessarily required to answer "yes" to all questions in order to proceed.

3. Use additional pages if necessary to state grounds for relief and/or facts you rely on to support relief. No brief or authorities need be furnished. If you choose to file a brief, please file it with your petition, but make it a separate document.

4. You must set forth all grounds for relief you want the Judge to review and facts supporting Your grounds for relief. You will likely be barred from presenting different grounds at a later date. Generally, you must exhaust available state court remedies as to each ground before you request action by the federal court. The one-year federal statute of limitations is tolled while you are challenging the judgment underlying this petition in *state* court, provided you comply with state procedural rules. *See* 28 U.S.C. § 2244(b), (d).

Billings Division: *Big Horn, Carbon, Carter, Custer, Dawson, Fallon, Garfield, Golden Valley, McCone, Musselshell, Park, Petroleum, Powder River, Prairie, Richland, Rosebud, Stillwater, Sweetgrass, Treasure, Wheatland, Wibaux, and Yellowstone Counties.*
U.S. District Court Clerk, 2601 2nd Ave. North, Suite 1200, Billings, MT 59101

Butte Division: *Beaverhead, Deer Lodge, Gallatin, Madison, and Silver Bow Counties.*
U.S. District Court Clerk, Mike Mansfield Courthouse, 400 N. Main, Butte, MT 59701

Great Falls Division: *Blaine, Cascade, Chouteau, Daniels, Fergus, Glacier, Hill, Judith Basin, Liberty, Phillips, Pondera, Roosevelt, Sheridan, Teton, Toole, and Valley Counties.*
U.S. District Court Clerk, Missouri River Courthouse, 125 Central Ave. West, Great Falls, MT 59404

Helena Division: *Broadwater, Jefferson, Lewis & Clark, Meagher, and Powell Counties.*
U.S. District Court Clerk, Paul G. Hatfield Courthouse, 901 Front St., Ste. 2100, Helena, MT 59626

Missoula Division: *Flathead, Granite, Lake, Lincoln, Mineral, Missoula, Ravalli, Sanders.*
U.S. District Court Clerk, Russell Smith Courthouse, P.O. Box 8537, Missoula, MT 59807

## PETITION

1.    Name of the state district court that entered the judgment you challenge and state the district court case number: First Judicial District Court, Lewis and Clark County, Montana. *State v. Strizich*, Cause No. BDC-2017-059.

2.    Date written judgment was entered or, if unknown, sentencing date: Amended Judgment and Commitment entered March 14, 2018.

3.    What were you convicted of, or on what grounds was your probation revoked? Aggravated Burglary, Criminal Possession of Dangerous Drugs, and Criminal Trespass to Property.

4.    What sentence was imposed? Sixty years in the Montana State Prison with fifteen years suspended.

5.    What was your plea?
    (a)    Not guilty                          [x]
    (b)    Guilty                              [ ]
    (c)    Nolo contendere or *Alford*    [ ]

    If you pleaded guilty or entered a nolo contendere or *Alford* plea on all counts, or if you entered such a plea on one or more counts and all other counts were dismissed, please go to Question Number 6. If you entered a guilty plea to one or more counts, and maintained a not guilty plea on another count, please state your plea on each count.

6.    Did you appeal your conviction to the Montana Supreme Court?
    Yes    [x]    *Case Number and date of result: State v. Strizich,* 2021 MT 306. November 30, 2021.
    No    [ ]

7.   Did you apply for relief with the Sentence Review Division?

Yes   [ ]   *Case Number and Date of Result:*

No    [x]

8.   Did you file a petition for certiorari in the United States Supreme Court?

Yes   [x]   *Case Number and Date of Result: Strizich v. Montana,* 142 S. Ct. 1699
              (2022). April 18, 2022.

No    [ ]

9.   Did you file in <u>state district court</u> a petition for postconviction relief?

Yes   [x]   *Case Number and Date of Filing: Strizich v. State,* Cause No. BDV 2023-
              191. March 20, 2023.

No    [ ]

10.  Did you appeal the denial of any postconviction petition?

Yes   [x]   *Case Number and Date of Result: Strizich v. State,* 2024 MT 230N.
              October 15, 2024.

No    [ ]

11.  If you did not appeal the denial of any postconviction petition, explain briefly why you
     did not: Not applicable.

12.  Gave you filed in the <u>Montana Supreme Court</u> a petition for writ of habeas corpus?

Yes   [ ]   *Case Number and Date of Result:*

No    [x]

13.  State each ground on which you claim that you are being held unlawfully (e.g., Ground
     One: Confrontation Clause violation). Briefly summarize the facts supporting each
     ground and answer the questions following:

A.    **Ground One**: **The Admission of Third-Party Flight Evidence Violated Strizich's Right to a Fair Trial Under the Fourteenth Amendment.**

(i)    Supporting Facts:

Three weeks after allegedly committing the crime of aggravated burglary, Strizich was in the Elkhorn Physical Rehabilitation Center (Elkhorn) in Clancy, MT, recovering from a gunshot wound to his leg. While in Elkhorn Strizich discovered that there was a warrant for his arrest. Strizich was scared and did not want to go to jail, so he had some friends come pick him up. Strizich left Elkhorn through a window and got into a vehicle driven by William Lamere (Lamere). The pair drove away from Elkhorn. Unbeknownst to Strizich, the vehicle was stolen.

Later that evening, at approximately 6:46 p.m., on Interstate 15, law enforcement initiated a traffic stop and attempted to pull over the stolen silver Honda Lamere was driving. Lamere led law enforcement on a high-speed chase to avoid legal responsibility for stealing the car. Strizich did not aide, encourage or participate in the high-speed chase—he was merely a passenger. Moreover, Strizich could not exit the vehicle because it was traveling at a high rate of speed. After the vehicle spun out and crashed into a snowbank, Strizich was taken into custody on the aggravated burglary warrant. Lamere was ultimately charged in Youth Court for theft of the vehicle and criminal endangerment for the high-speed chase. He later admitted to criminal endangerment. The vehicle theft was dismissed as part of an agreement.

At trial, the State asked the court to allow in evidence that Strizich left Elkhorn three weeks after the alleged aggravated burglary and was a passenger in a vehicle driven by Lamere. The State also asked the court to take judicial notice of Lamere's Youth Court Dispositional Order wherein Lamere admitted to the offense of criminal endangerment.[1] According to the State, this evidence "demonstrated [Strizich's] consciousness of guilt." The court admitted the evidence over trial counsel's objection. At the behest of the State, the court then excluded any evidence of the fact that the vehicle Lamere was driving was stolen.

---

[1] In the Youth Court proceedings against Lamere the State alleged Strizich was a victim of Lamere's offense. In these proceedings against Strizich, however, the State changed positions and represented to the district court and the Montana Supreme Court that Strizich was a participant.

The State called three witnesses who provided details of Strizich's departure from Elkhorn and Lamere's subsequent high-speed chase. Notably, it did not call Lamere and there is no evidence that he was unavailable to testify. Strizich never had the chance to confront Lamere.

The State began with Elena Applin, a nurse at Elkhorn. She testified that Strizich left the facility through a window. This evidence would have been sufficient for the State to establish Strizich's "consciousness of guilt." The State crossed over into prejudicial territory, however, when it presented the following evidence:

Deputy Greg Holmund, of the Lewis and Clark County Sheriff's Office, testified that he heard a report that Strizich fled Elkhorn in a silver Honda Accord and he decided to park and wait to see if he could spot the car. Eventually he saw the vehicle and began to follow it. He described the driver of the Accord and the driver of another car (which was affiliated with Lamere) as "playing a cat and mouse game. When they came upon other vehicles, they would switch lanes real abruptly and real fast." Deputy Holmlund opined that "they did not want me behind that Honda." Deputy Holmlund eventually heard that the Honda had crashed and came upon the scene to find officers with weapons drawn and Strizich being held at gunpoint.

The State continued with testimony from Deputy Joshua Schmidt, also of the Lewis and Clark County Sheriff's Office. Deputy Schmidt testified that he knew Strizich fled Elkhorn in a Silver Honda. Deputy Schmidt observed the vehicle traveling between 90-100 miles an hour. He described the vehicle as "eluding law enforcement" and accelerating "to speeds at one point in excess of 135 miles per hour." Deputy Schmidt testified that the vehicle crashed, at which point he and another deputy drew their pistols, handcuffed Strizich and took him into custody.

The court then took judicial notice of the Lamere Youth Court Dispositional Order and instructed the jury:

> [t]he Court takes judicial notice that Mr. Lamere *admitted* to the offense of criminal endangerment in that on or about January 21, 2017, at approximately 6:46 p.m., he knowingly engaged in conduct that created a substantial risk of death or serious bodily injury to another when he was observed driving a silver Honda four-door passenger car with a male in the passenger seat in excess of 135 miles an hour northbound on interstate 15 through the Sieben Flats area while being pursued by law enforcement vehicles who had their lights on. After he exited the interstate highway on Recreation Road driving 65 miles an hour, he lost control of the car and spun into a snowbank.[2] (emphasis added).

---

[2] Lamere admitted to creating a substantial risk of death or serious bodily injury to Strizich, the passenger in the Honda Accord.

Strizich's act of leaving Elkhorn through a window may show his consciousness of guilt of the burglary committed three weeks prior. However, neither Lamere's act of leading law enforcement on a high-speed chase to avoid legal responsibility for stealing the car, nor his admissions to the crime of criminal endangerment, show Strizich's state of mind and were improperly admitted for that purpose.

Compounding the error, at the behest of the State, the court excluded any reference to the fact that Lamere stole the car. This permitted the State to create the misleading impression to the jury that Lamere's high-speed chase was Strizich's attempt to avoid legal responsibility for the burglary. Though Strizich maintains that no evidence of any of Lamere's acts or admissions should have been admitted, once Lamere's high-speed chase came in, the court should have allowed in evidence of the fact that Lamere stole the car to show the high-speed chase was actually Lamere's consciousness of guilt of the car theft.

The impact of three witnesses, including two deputies from the Lewis and Clark County Sheriff's Office, providing details of Strizich's departure from Elkhorn and Lamere's sensational high-speed chase unfairly prejudiced the jury against Strizich. The court's decision to take judicial notice of Lamere's Youth Court Dispositional Order, concerning an offense for which Strizich was not only not charged, but was a victim, only further emphasizes the prejudicial effect of the evidence on the jury. The State sought to align the sensational acts of Lamere with Strizich's underlying offense, which was likewise sensational, and cast Strizich in the same reckless disregard for the safety of others as Lamere. Strizich's Fourteenth Amendment right to a fair trial was violated.

(ii)     Did you raise this issue in the Montana Supreme Court?
       Direct Appeal               [x]
       Postconviction Appeal    [ ]
       Other                    [ ]

       If so, what did the Montana Supreme Court decide? Check one or both:
       Dismissed issue on procedural grounds:    [ ]
       Denied issue for lack of merit:        [x]

*Please provide the case number and date of result:* State v. Strizich, 2021 MT 306 (Nov. 30, 2021).

      (iii)    Did you ask the Montana Supreme Court to consider federal law in its decision?

            Yes    [x]

            No     [ ]

**Note: Strizich fairly presented this claim to the state court, even though the Fourteenth Amendment was not specifically invoked. First, Strizich repeatedly referred to his right "to a fair trial." Second, the fair presentation requirement is satisfied because Strizich's state court argument that evidentiary error resulted in plain error—i.e., miscarriage of justice—was essentially the same as a federal due process claim.**

      (iv)    If you did not raise the claim before the Montana Supreme Court, explain briefly why not:

**In the alternative to Ground One:**

**B.**      **<u>Ground Two</u>: Trial and Appellate Counsel Provided Ineffective Assistance by Failing to Object to or Argue the Elkhorn Flight Evidence Violated Strizich's Right to a Fair Trial Under the Fourteenth Amendment.**

      (i)    Supporting Facts:

      See Ground One, above. In the event the Court determines that Ground One was not fairly presented to the state court and therefore not exhausted, Strizich contends his right to effective assistance of counsel under the Sixth and Fourteenth Amendments was violated by counsels' failure to preserve his appeal rights with respect to this claim.

      Specifically, trial counsel objected to the admission of the Elkhorn flight evidence on the grounds that it violated Rules 402 and 404(b) of the Montana Rules of Evidence. However, trial counsel did not object and propose that, if evidence of Lamere's high speed chase was to be

admitted, then the fact that the vehicle Lamere was driving was stolen should also be admitted. Trial counsel ultimately failed to object to the Elkhorn flight evidence on the grounds that it violated Strizich's right to a fair trial under the Fourteenth Amendment.

Further, appellate counsel argued that the admission of the Elkhorn flight evidence violated Rules 402, 403, and 404(b) of the Montana Rules of Evidence and denied Strizich his right to a fair trial. However, appellate counsel did not argue that evidence of Lamere's vehicle being stolen should have been admitted, or that the Elkhorn flight evidence violated Strizich's right to a fair trial under the Fourteenth Amendment.

By failing to preserve Strizich's appeal rights both trial and appellate counsels' performances fell below an objective standard of reasonableness and constitute ineffective assistance under the Sixth and Fourteenth Amendments.

 

(ii)    Did you raise this issue in the Montana Supreme Court?

| | |
|---|---|
| Direct Appeal | [ ] |
| Postconviction Appeal | [x] |
| Other | [ ] |

If so, what did the Montana Supreme Court decide? Check one or both:

| | |
|---|---|
| Dismissed issue on procedural grounds: | [x] |
| Denied issue for lack of merit: | [x] |

*Please provide the case number and date of result:* Strizich v. State, 2024 MT 230N (Oct. 15, 2024).

(iii)    Did you ask the Montana Supreme Court to consider federal law in its decision?

Yes    [x]    6th and 14th Amendments; *Strickland v. Washington,* 466 U.S. 668 (1984).

No    [ ]

(iv)    If you did not raise the claim before the Montana Supreme Court, explain briefly

why not:

**C.**    **Ground Three:** **Strizich's Sixth Amendment Right to Confront Witnesses was Violated When the Court Took Judicial Notice of a Youth Court Dispositional Order and Instructed the Jury on Lamere's Admissions to the Crime of Criminal Endangerment.**

(i)    Supporting Facts:

Three weeks after allegedly committing the crime of aggravated burglary, Strizich was in Elkhorn recovering from a gunshot wound to his leg. While in Elkhorn Strizich discovered that there was a warrant for his arrest. Strizich was scared and did not want to go to jail, so he had some friends come pick him up. Strizich left Elkhorn through a window and got into a vehicle driven by Lamere. The pair drove away from Elkhorn. Unbeknownst to Strizich, the vehicle was stolen.

Later that evening, at approximately 6:46 p.m., on Interstate 15, law enforcement initiated a traffic stop and attempted to pull over the silver Honda Lamere was driving. Lamere led law enforcement on a high-speed chase to avoid legal responsibility for stealing the car. Strizich did not aide, encourage or participate in the high-speed chase—he was merely a passenger. Moreover, Strizich could not exit the vehicle because it was traveling at a high rate of speed. After the vehicle spun out and crashed into a snowbank, Strizich was taken into custody on the aggravated burglary warrant. Lamere was ultimately charged in Youth Court for theft of the vehicle and criminal endangerment for the high-speed chase. He later admitted to criminal endangerment. The vehicle theft was dismissed as part of an agreement.

At trial, the State also asked the court to take judicial notice of Lamere's Youth Court Dispositional Order wherein Lamere admitted to the offense of criminal endangerment. According to the State this evidence "demonstrated [Strizich's] consciousness of guilt."

After the State called two sheriff's deputies to testify to the details of Lamere's high-speed chase, the court then took judicial notice of the Lamere Youth Court Dispositional Order and instructed the jury:

[t]he Court takes judicial notice that Mr. Lamere *admitted* to the offense of criminal endangerment in that on or about January 21, 2017, at approximately 6:46 p.m., he knowingly engaged in conduct that created a substantial risk of death or serious bodily injury to another when he was observed driving a silver Honda four-door passenger car with a male in the passenger seat in excess of 135 miles an hour northbound on interstate 15 through the Sieben Flats area while being pursued by law enforcement vehicles who had their lights on. After he exited the interstate highway on Recreation Road driving 65 miles an hour, he lost control of the car and spun into a snowbank.[3] (emphasis added).

Although Lamere's admission of guilt was admitted at Strizich's trial, the State did not call Lamere to testify. There is no evidence that he was unavailable to testify, or that Strizich had a prior opportunity to cross-examine him. Strizich was denied the right to confront this witness under the Sixth Amendment.

(ii)     Did you raise this issue in the Montana Supreme Court?

Direct Appeal                        [x]
Postconviction Appeal                [ ]
Other                                [ ]

If so, what did the Montana Supreme Court decide? Check one or both:

Dismissed issue on procedural grounds:         [x]
Denied issue for lack of merit:                [x]

**Note: Appellate counsel raised this issue on direct appeal. Though the Montana Supreme Court noted that the argument was not raised in the trial court, it considered and denied the issue for lack of merit. Therefore, this claim is exhausted.**

*Please provide the case number and date of result:* State v. Strizich, 2021 MT 306, ¶ 21 n.1 (Nov. 30, 2021).

(iii)    Did you ask the Montana Supreme Court to consider federal law in its decision?

---

[3] The jury had just heard the Lewis and Clark Sheriff Deputies testify to the details of Lamere's high-speed chase.

Yes    [x]    Confrontation Clause of the 6th Amendment; *Crawford v.*
                      *Washington,* 514 U.S. 36 (2004).

No    [ ]

(iv)    If you did not raise the claim before the Montana Supreme Court, explain briefly
why not:

**D.**    <u>Ground Four</u>**: Trial Counsel was Ineffective by Failing to Object to or Provide Proper *Mens Rea* Jury Instructions for the Aggravating Factor Set Forth in Aggravated Burglary.**

(i)    Supporting Facts:

The State charged Strizich with Aggravated Burglary in that he "knowingly entered or remained unlawfully in an occupied structure…with the purpose to commit an offense therein, and in effecting entry or in the course of committing the offense or in the immediate flight thereafter, he purposely, knowingly, or negligently inflicted or attempted to inflict bodily injury upon another(s)" in violation of Mont. Code Ann. § 45-6-204(2)(b)(ii). Consistently, at trial the court instructed the jury as to the elements of aggravated burglary:

> To convict a defendant of the charge of aggravated burglary as alleged in Count I, the State must prove the following elements:
>      1. That the defendant knowingly entered or remained unlawfully in an occupied structure; and
>      2. That the defendant did so with the *purpose to commit* the offense of Theft therein; and
>      3. That in effecting entry, in the course of committing the offense, or in immediate flight after commission of the offense, the defendant purposely, knowingly or negligently inflicted or attempted to inflict bodily injury upon another(s).

(emphasis added). The above elements instruction was correct. As to the third (aggravating) element, however, the district court did not properly instruct the jury on the mental states.

Montana statutory definitions of 'knowingly' and 'purposely' contain both conduct-based and result-based versions. See Mont. Code Ann. § 45-2-101(35), (65). The statutory definition of 'negligently' contains both result-based and circumstance-based versions. See Mont. Code Ann. § 45-2-101(43). Importantly, a result-based offense does not criminalize any particularized conduct, rather, it criminalizes a specific result. The "infliction or attempted infliction of bodily injury" is a result. Therefore, a proper definition of each mental state required to make a burglary "aggravated" in this case must be result-based.

As to the third element of aggravated burglary, noticeably absent in the jury instructions were result-based mental state definitions for 'knowingly' and 'purposely.' The only definition the district court used for 'knowingly' was a conduct-based definition that only applied to the first element of aggravated burglary. It stated:

> …a person knowingly enters or remains unlawfully in an occupied structure when the person is aware of his or her conduct.

The definition used for 'purposely' was result-based, but only applied to the second element of aggravated burglary. It stated:

> …a person has the *purpose to commit* an offense when it is the person's conscious object to cause such a result.

(emphasis added). Based on the language used in the 'purposely' instruction, it was clearly only applicable to the second element of the burglary and aggravated burglary charges. *Compare* second element of Count I—Aggravated Burglary elements instruction *with* 'purposely' mental state instruction. The instruction on 'negligently' was also an incorrect definition. It stated:

> …a person acts negligently when an act is done with a conscious disregard of the risk or when a person should be aware of the risk *by knowingly entering or remaining unlawfully in an occupied structure*….

(emphasis added). Further, there was no instruction given defining 'attempt.'

The State capitalized on the missing and erroneous instructions during its closing arguments:

> [W]hat sets this off from burglary, which is the lesser-included offense, is in the course of committing the offense or in the immediate flight after, [Strizich] purposely or knowingly or negligently inflicted or attempted to inflict bodily injury upon another. So [Strizich] did enter that cabin, and by doing that hurt Mr. Buus.

Furthermore, the State also argued to the jury that it should convict Strizich of Count I—Aggravated Burglary on the theory that "he went up to that [cabin] door armed, as the evidence is...."[4] These are separate and distinct legal theories that Strizich was not charged with. Trial counsel failed to object to the above jury instructions or arguments.

As to the third element of aggravated burglary, a proper definition of 'knowingly' would have been "a person knowingly inflicts or attempts to inflict bodily injury upon another when it is the person's conscious object to cause such a result." See Mont. Code Ann. § 45-2-101(35). A proper definition of 'purposely' would have been "a person purposely inflicts or attempts to inflict bodily injury upon another when it is the person's conscious object to cause such a result." See Mont. Code Ann. 45-2-101(65). A proper definition of 'negligently' would have been "a person negligently inflicts bodily injury upon another when the person consciously disregards a risk that the result will occur or when the person disregards a risk of which the person should be aware that the result will occur." See Mont. Code Ann. § 45-2-101(43).

A proper definition of 'attempt' would have been "a person commits the offense of attempt when, with the purpose to commit a specific offense, a person does any act toward the commission of the offense." See Mont. Code Ann. § 45-4-103(1). Further, "the 'act' must constitute a material step toward the commission of the offense." State v. Jackson, 2009 MT 427, ¶ 24. Explaining 'attempt' was important to avoid confusing the jury as to which mental states were required to prove the actual infliction versus attempted infliction of bodily injury. For example, a person cannot negligently attempt to commit an offense. Attempt requires a purpose to commit a specific offense. It was imperative for the jury to understand this distinction. This is especially true in this case where the crux of the State's allegations are that Strizich inflicted or attempted to inflict bodily injury on the victim by breaking into the cabin and, in immediate flight after, walking forward, unarmed, with his hands up.

Trial counsel failed to offer the above jury instructions. To the contrary, the mental state instructions trial counsel requested were conduct-based. Trial counsel proposed the following instruction on the definition of 'knowingly': "A person acts knowingly when the person is aware of his or her conduct." Trial counsel offered the following proposed instruction on the definition of 'purposely': "A person acts purposely when it is the person's conscious object to engage in conduct of that nature."

---

[4] No evidence was ever presented that Strizich was armed.

The effect of failing to give result-based mental state definitions altered the State's burden of proving beyond a reasonable doubt the elements of the aggravated burglary offense—specifically, the purposeful, knowing, or negligent infliction or attempted infliction of bodily injury—in violation of the Fourteenth Amendment. To prove that Strizich was aware of his conduct is one thing; to prove that he was aware of the high probability of the risks posed by his conduct is quite another. As explained above, trial counsel was complicit in the lowering of the State's burden of proof in this case by requesting conduct-based mental state instructions and failing to object to the court's final jury instructions. The prejudice resulting from the erroneous instructions was compounded by the State's arguments during closing, which trial counsel also failed to object to.

(ii)    Did you raise this issue in the Montana Supreme Court?

| Direct Appeal | [ ] |
| Postconviction Appeal | [x] |
| Other | [ ] |

If so, what did the Montana Supreme Court decide? Check one or both:

| Dismissed issue on procedural grounds: | [ ] |
| Denied issue for lack of merit: | [x] |

*Please provide the case number and date of result:* Strizich v. State, 2024 MT 230N (Oct. 15, 2024).

(iii)    Did you ask the Montana Supreme Court to consider federal law in its decision?

Yes    [x]    Sixth and Fourteenth Amendments; *Jackson v. Virginia,* 443 U.S. 307 (1979); *Strickland v. Washington,* 466 U.S. 668 (1984).

No    [ ]

(iv)    If you did not raise the claim before the Montana Supreme Court, explain briefly

why not:

E.    **Ground Five**: Appellate Counsel Provided Ineffective by Failing to Challenge the
Sufficiency of the Evidence for Aggravated Burglary.

(i)    Supporting Facts:

The State charged Strizich with aggravated burglary in that he "knowingly entered or
remained unlawfully in an occupied structure…with the purpose to commit an offense therein,
and in effecting entry or in the course of committing the offense or in the immediate flight
thereafter, he purposely, knowingly, or negligently inflicted or attempted to inflict bodily injury
upon another(s)" in violation of Mont. Code Ann. § 45-6-204(2)(b)(ii).

Viewing the evidence in the light most favorable to the State, the following took place at
Marshall Buus' (Marshall's) and his wife Sonja Buus' (Sonja's) cabin on December 28, 2016:
the Buuses drove up to their cabin in Wolf Creek and observed a Dodge Durango in their
driveway that they did not recognize. Marshall noticed lights on inside the cabin, and surmised
that someone had broken in. As Marshall was parking, Sonja saw Strizich and Kaleb Daniels
(Daniels) go around the bottom corner of the cabin and said "there they go." Marshall told Sonja
"grab my gun" and exited the vehicle. Marshall gave chase. He approached the Durango, opened
the front passenger door and leaned inside, and yelled at Daniels who was sitting in the driver
seat, "what the hell are you doing here."

> At that point, [Daniels] reached in his pocket. He pulled out a pistol and stuck it in my
> face and all I saw was a chrome-plated pistol stuck in my face, and then he yelled
> something like, stay the hell back or get the hell back. At that point I'm starting to back
> up and I yell something like, het that Goddamn gun out of my face.

Marshall backed out of the passenger side of the Durango. Meanwhile, Sonja retrieved a pistol
from her vehicle and ran it down and handed it to Marshall. Daniels then exited the driver side of
the Durango. Daniels and Marshall yelled back and forth and pointed their weapons at each
other. Marshall testified that "[Daniels] reaches over the top of the truck and aims at me and
pulls the trigger and it just goes click." Marshall racked the slide on his pistol to load a live

round, and Daniels ran away. While this was happening Strizich had run to the bottom end of the driveway and taken cover behind some trees and brush. Strizich began making his way back towards where things were happening to try to deescalate the situation and explain to Marshall what had happened. Strizich was unarmed and had his hands up.

Marshall then crawled into the Durango and removed the keys from the ignition to prevent the suspects from getting away. Marshall testified that when he was inside the Durango removing the keys he could "see [Strizich] down there and he's starting to walk towards the vehicle and I start yelling at him." Marshall stated that he yelled at Strizich to stay the hell away with his gun pointed at Strizich, but Strizich kept walking up towards Marshall. Marshall never saw Strizich with a firearm. Marshall never saw Strizich reach for a gun. At no point did Marshall see Strizich with anything in his hands or hear Strizich say anything threatening. [5] Marshall fired a shot into the ground and was still yelling for him to stay away. According to Marshall, Strizich got within five feet of him. Marshall then fired a second shot that he testified Strizich stepped into and shot Strizich in the leg. [6] Daniels and Marshall then opened fire on each other.

Detective William Pandis (Pandis) testified as to Marshall's demeanor on the day of the burglary. Marshall was "very distraught and very upset." However, Detective Pandis could not provide any physical attributes to support his assessment, except "[Marshall] was red, but it was very cold and the wind was blowing hard. So he could be flushed or being upset or because he spent a little bit of time outside." Sonja testified on direct examination as follows:

> Q: Now, after this happened, how was Marshall doing.
> A: After the 28[th]?
> Q: In the months after the incident.
> A: Oh, well, he has good days and bad days. He doesn't sleep real well and he gets really upset about it. I guess you could say he dreams about it at night. He thinks about it in the shower. You can find him just sitting there off in La-La Land. He's not doing very well really.

---

[5] Strizich testified that he was imploring Marshall to "stop" and "calm down." Sonja testified on cross-examination that Strizich had his hands up and was yelling at Marshall to "stop."

[6] Marshall's claim that Strizich continually walked towards and got within five feet of him before he "accidentally" shot Strizich is contradicted by physical and forensic evidence. At trial, firearm and tool mark expert Lynette Lancon testified that gunpowder particles dropped off beyond six feet of Marshall's pistol, and no traces of gunpowder residues could be located on Strizich's jeans. Lancon did discover lead tracings, however, which is consistent with the discharge of a firearm. Though he claims Strizich was walking towards him, Marshall pointed his pistol at the unarmed Strizich and ordered him not to leave, and ultimately shot Strizich in the leg.

Sonja described herself as doing much better than Marshall, "I didn't have a gun in my face." Strizich never pointed a gun at Marshall or even held a gun—Daniels did.

Relevant here, the State needed to prove that Strizich either inflicted or attempted to inflict bodily injury on Marshall. "Bodily injury" is defined as physical pain, illness, or an impairment of physical condition and includes mental illness or impairment. Mont. Code Ann. § 45-2-101(5). There was no evidence at trial that Marshall suffered any physical pain, illness, or an impairment of physical condition.
In fact, it is undisputed that Strizich never made or attempted to make physical contact of any kind with Marshall.

In Montana there is no statutory definition of mental illness. However, the Montana Supreme Court has adopted a New York state affirmative definition of mental illness. *State v. Wooster,* 1999 MT 22, ¶ 42. "'Mental illness' means an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care, treatment and rehabilitation." *Id.* There was no evidence presented at trial that Marshall required care, treatment, or rehabilitation due to any mental illness. Moreover, such would have required an expert, which the State failed to present.

Alternatively, if Marshall did suffer a bodily injury, this resulted from the actions of Daniels rather than Strizich (See P. 14 herein). Strizich was observed, on the other hand, walking forward with his hands up yelling "stop." No evidence was presented that Strizich verbally threatened anyone, had an instrument or weapon of any kind in his hands, clenched his fists, threw a punch or kick, or any other overt act. Walking toward someone, unarmed, with hands up is too attenuated to constitute an attempted, let alone actual, infliction of bodily injury.

During closing arguments, the State clearly outlined its theory of how Marshall suffered bodily injury:

> [W]hat sets this off from burlary, which is the lesser-inluded offense, is in the course of committing the offense or in the immediate flight after, [Strizich] purposely or knowingly or negligently inflicted or attempted to inflict bodily injury upon another. So [Strizich] did enter that cabin, and by doing that hurt Mr. Buus.

Furthermore, the State argued to the jury that it should convict Strizich of Count I—Aggravated Burglary on the theory that "he went up to that [cabin] door armed, as the evidence is…."

Further elaborating these theories, in its response brief on appeal of the denial of Strizich's petition for postconviction relief, the State contended that "because of the burglary and Strizich's and Daniels' attempted flight after the burglary, Marshall suffered a mental illness or mental impairment." First, the State admits that Strizich did not physically strike or touch Marshall, or even attempt to. Second, the State charged that Strizich broke into the Buus cabin to steal, not to inflict bodily injury upon another. These are separate and distinct legal theories. The fact of the matter is there is no evidence that *Strizich* inflicted or attempted to inflict bodily injury on Marshall.

Appellate counsel appealed several issues to the Montana Supreme Court but did not challenge the sufficiency of the evidence of aggravated burglary. First, he did not think the issue was properly preserved by trial counsel. Appellate counsel was unaware of the holdings in *State v. Granby,* 283 Mont. 193 (1997), and *State v. Himes,* 2015 MT 91, which allow a challenge to the sufficiency of the evidence for the first time on direct appeal. Appellate counsel acknowledges "[e]lementary research would have discovered either *Granby* or *Himes.*" Appellate counsel had several months to research the law and decide which issues to bring; he was not constrained by time. He goes further and acknowledges that it was error not to raise this issue on appeal.

The prejudice Strizich suffered is he was deprived of an appeal of this issue to the Montana Supreme Court and the State was relieved of its burden under the Fourteenth Amendment to prove every element of aggravated burglary beyond a reasonable doubt—specifically, that Strizich inflivted or attempted to inflict bodily injury upon Marshall.

    (ii)    Did you raise this issue in the Montana Supreme Court?

| | |
|---|---|
| Direct Appeal | [ ] |
| Postconviction Appeal | [x] |
| Other | [ ] |

If so, what did the Montana Supreme Court decide? Check one or both:

Dismissed issue on procedural grounds:      [ ]

Denied issue for lack of merit:                    [x]

*Please provide the case number and date of result:* Strizich v. State, 2024 MT 230N (Oct. 15, 2024).

    (iii)    Did you ask the Montana Supreme Court to consider federal law in its decision?

           Yes    [x]    Sixth and Fourteenth Amendments; *In re Winship,* 397 U.S. 358 (1970); *Jackson v. Virginia,* 443 U.S. 307 (1979); *Strickland v. Washington,* 466 U.S. 668 (1984).

           No    [ ]

14.    Do you have an action or appeal now pending in any court, state or federal, regarding the judgment or decision you challenge in this Petition?

Yes    [ ]

No    [x]

If Yes, what issues do you raise in that case?

15.    Give the name of the attorney who represented you in the following stages:

    (a)    At change of plea hearing or at trial (whichever is applicable): Bryan Norcross.

    (b)    At sentencing: Bryan Norcross.

    (c)    On appeal: Colin Stephens

    (d)    In any post-conviction proceeding bin state district court: Paul Simon

    (e)    On appeal from any adverse ruling in a post-conviction proceeding: Paul Simon

    (f)    In any habeas proceeding: not applicable.

16.   Would you like appointed counsel to assist you in this proceeding?

**YES**  **[X]**

No    [ ]

17.   Petitioner asks the Court to grant the following relief:

(a)   appoint counsel from the Federal Defender's Office to represent Petitioner in this proceeding;

(b)   direct the State to respond to the petition;

(c)   permit Petitioner to submit a traverse to the State's response to the petition;

(d)   grant Petitioner leave to conduct discovery;

(e)   grant Petitioner leave to expand the record;

(f)   grant Petitioner an evidentiary hearing;

(g)   issue a writ of habeas corpus to have Petitioner brought before it to the end that he may

be discharged from his unconstitutional confinement and restraint; and/or

(h)   any other relief to which Petitioner may be entitled.

Jory R. Strizich
Petitioner Pro Se

## Petitioner's Declaration

A.   I am the Petitioner in this case. I understand the submission of a false statement or false answer to any question may subject me to penalties for perjury. I declare under penalty of

perjury that I have read this Petition, and the information I have set forth is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

B.    I will keep the Court informed of my current mailing address. I understand that failure to do so may result in dismissal of my case without actual notice to me.

C.    *Incarcerated prisoners Only:* This Petition was deposited in the prison system for legal mail on:

the 15th day of _____May_____, 2025.

_____
                                    Jory R. Strizich

_____5/15/25_____
                                    Date Signed